713 F.2d 476
 In the Matter of PACIFIC FAR EAST LINE, INC., a Delaware
corporation, Debtor.
Frederick S. WYLE, Trustee in Bankruptcy of Pacific Far East
Line, Inc., Plaintiff-Appellant,
v.
PACIFIC MARITIME ASSOCIATION, et al., Defendants-Appellees.
 No. 82-4039.
 United States Court of Appeals,
Ninth Circuit.
 Argued and Submitted April 11, 1983.
Decided Aug. 16, 1983.
 
 Jan T. Chilton, Severson, Werson, Berke & Melchior, San Francisco, Cal., for plaintiff-appellant.
 Charles C. Ivie, Gibson, Dunn & Crutcher, Los Angeles, Cal., for defendants-appellees.
 Appeal from the United States District Court for the Northern District of California.
 Before WISDOM,* SCHROEDER, and BOOCHEVER, Circuit Judges.
 SCHROEDER, Circuit Judge.
 
 
 1
 This case requires us to interpret section 64(a)(1) of the old Bankruptcy Act, 11 U.S.C. § 104(a)(1) (1976) (repealed 1978) which governed the priority of claims.[1] The narrow question on appeal is whether the district court erred in upholding the determination of the bankruptcy court that all of a $3,108,000 payment by the trustee in bankruptcy, Frederick S. Wyle, to Pacific Maritime Association (PMA) for employee benefit plans could be attributed to administrative expense rather than pre-filing indebtedness. The district court agreed with the bankruptcy judge that the entire payment, not merely a portion of it, was an expense of administration within the purview of section 64(a)(1). We affirm.
 
 I. FACTS
 
 2
 The essential facts are not disputed and can be summarized as follows. Pacific Far East Line (PFEL) filed Chapter XI proceedings on January 31, 1978, and was the debtor-in-possession during the period relevant to this dispute. The defendant, PMA, is a maritime association which represents its members in collective bargaining negotiations. Under the terms of the collective bargaining agreements, PMA members contribute to employee benefit plans based upon the number of seamen "man-days" worked during the prior month. PMA administers employer contributions by transmitting funds to the individual benefit plans. Employer payments are due on the twentieth of each month.[2] An employer is required to make payments based on the man-days worked by a particular employee, even though that employee may not yet be eligible for benefits. If one of the employer members of PMA fails to contribute its share, the balance required to fund the benefits must ultimately be made up by the other employers.
 
 
 3
 At the time PFEL filed its Chapter XI petition, it had missed two payments to PMA: one for December 20, 1977 and one for January 20, 1978. These payments totaled $1,600,000, and are not the subject of the present action. The parties agree that they are clearly pre-filing indebtedness.
 
 
 4
 By April 1978, PFEL's debt to the employee benefit plans came to approximately $4.7 million. During that month, PFEL, as debtor-in-possession, applied to the bankruptcy court for approval of a compromise of its antitrust and breach of warranty claims against Northrup Corporation. On April 24, 1978, the bankruptcy court approved the settlement and ordered PFEL to pay $3.1 million of the proceeds to PMA, representing payments which had fallen due since the January 31 filing. After PFEL was adjudicated bankrupt, the trustee joined other creditors in appealing the Northrup compromise on the ground that the $3.1 million in employer contribution payments improperly included a substantial component attributable to pre-filing debt. The district court reversed and remanded for further consideration of the bankruptcy court's order authorizing the disbursement.
 
 
 5
 On remand, the bankruptcy court again approved the payment to PMA, although it expressly found that $1,538,590.20 of the payment was measured by work performed before PFEL had filed its Chapter XI petition. The court denied the trustee's motion and granted PMA summary judgment, holding that the entire payment was for post-petition debt entitled to first priority as an administrative expense. The district court affirmed.
 
 II. ANALYSIS
 
 6
 The district court granted summary judgment on a legal question of statutory interpretation, and the facts are undisputed. We therefore review its decision de novo. Turner v. Prod, 707 F.2d 1109, at 1114 (9th Cir.1983).
 
 
 7
 The relevant portion of the former Bankruptcy Act provides that
 
 
 8
 [t]he debts to have priority, in advance of the payment of dividends to creditors, and to be paid in full out of bankrupt estates, and the order of payment, shall be (1) the costs and expenses of administration, including the actual and necessary costs and expenses of preserving the estate subsequent to filing the petition ....
 
 
 9
 11 U.S.C. § 104(a). Administrative expenses under this provision are payable only if they are "subsequent" to the filing of the petition. Id.; 3A Collier on Bankruptcy p 64.102[1-2] (14th ed. 1975) (hereinafter Collier 14th ed.). Administrative expense claims may arise from an ongoing relationship with a provider of services which began before the petition was filed. For example, the rent which accrues during the trustee's occupation under a pre-existing lease may be claimed as administrative expense. See In re Frederick Meats, Inc., 483 F.2d 951, 952 (9th Cir.1973). The existence of an ongoing relationship cannot be used, however, to recover pre-filing debts. For example, a utility cannot argue that payment of pre-filing debt is a condition of post-filing service, and is therefore an administrative expense. Collier 14th ed. p 64.102 at 2083 n. 17.
 
 
 10
 In some cases there is an ongoing relationship which spans the filing date. The question may then arise whether an expenditure payable only after the filing date is properly attributable to the period before the petition was filed, in which case it would not be covered by section 64(a)(1). If on the other hand the payment is attributable to the period after filing, it would be covered by that section as an administrative expense. One area in which this determination has caused courts difficulty under the old Act, and which is at least arguably analogous to PMA's claim here, concerns claims to severance pay by employees who were discharged after the petition was filed. See 3 Collier on Bankruptcy p 503.04 at 503-18 (15th ed. 1983). The Second Circuit, reasoning that severance pay constitutes compensation for the employee's post-filing termination, has allowed all such claims priority as post-filing administrative expense. See Straus-Duparquet, Inc. v. Local No. 3 Int'l Bhd. of Elec. Workers, 386 F.2d 649, 651 (2d Cir.1967). The rule this circuit has followed under the old Act is more complex.
 
 
 11
 Our severance pay rule divides severance pay into two general types: pay at termination in lieu of notice, and pay at termination based on length of employment. See In re Health Maintenance Foundation, 680 F.2d 619, 621 (9th Cir.1982) (HMO ). Pay in lieu of notice is considered an administrative expense; but pay based upon length of employment is not, because the latter is actually a form of remuneration for work performed before the filing date. See id. at 622. HMO adopted the rationale for this rule from a First Circuit opinion which addressed the same severance pay issue, and which held that
 
 
 12
 [A] creditor's right to payment will be afforded first priority [administrative expense] only to the extent that the consideration supporting the claimant's right to payment was both supplied to and beneficial to the ... [trustee] in the operation of the business....
 
 
 13
 Because the amount of the severance pay claims depends upon the length of employment, the consideration supporting ... [the employees'] claims was the services performed for ... [debtor] over the entire period of ... employment. Since no part of their present claims arise [sic] from services performed for the ... [trustee], no portion of appellant's claims may receive § 64(a)(1) priority.
 
 
 14
 HMO, 680 F.2d at 621 (quoting In re Mammoth Mart, Inc., 536 F.2d 950, 954-55 (1st Cir.1976)).
 
 
 15
 The trustee contends that the rule and reasoning we apply in severance pay cases require reversal, because the disputed payments to the plan were computed with reference to hours worked by employees prior to the bankruptcy proceedings. The trustee argues that those hours of work must, under HMO and Mammoth Mart, be viewed as the "consideration" for the post-filing payments, and that the payments therefore were not administrative expense.
 
 
 16
 Both the bankruptcy and the district courts rejected this theory. The district court noted that these payments superficially resemble severance payments based on length of pre-filing employment, which are not allowed as administrative expense. The court observed, however, that the analogy was imperfect because the payments here were due regardless of employees' eligibility or length of service. These payments could therefore be likened to the type of severance pay which is calculated without regard to length of employment, and which both HMO and Mammoth Mart allow as administrative expense. See 680 F.2d at 621; 536 F.2d at 953. The district court thus concluded that the severance pay cases did not compel a judgment for the trustee in this case. We agree.
 
 
 17
 The district court further concluded that the hours of pre-filing labor were not the consideration for the payments to the plan. Rather, the pre-filing hours were merely the units of measure for the post-filing payments, which were necessary for continued performance by both the employee and the employer under the collective bargaining agreement.
 
 
 18
 The district court's position finds support in cases which recognize that because the obligation to make payments is between the employer and the benefit fund, the payments are not "wages" of the employee. See United States v. Embassy Restaurant, Inc., 359 U.S. 29, 32, 79 S.Ct. 554, 556, 3 L.Ed.2d 601 (1959); Matter of Kessler, 23 B.R. 722, 724 (Bkrtcy.S.D.N.Y.1982). The employees whose man-hours were measured in calculating the payments to the trusts could not have claimed these payments as part of their remuneration for that month. See Embassy Restaurant, 359 U.S. at 32, 79 S.Ct. at 556; see also Morrison-Knudsen Construction Co. v. Director, Office of Workmen's Compensation Programs, --- U.S. ----, 103 S.Ct. 2045, 76 L.Ed.2d 194 (U.S.1983) (construing the word "wages" in another statute not to include payments to multi-employer plans); Long Island Tanker's Corp. v. S.S. Kaimana, 265 F.Supp. 723 (N.D.Cal.1967), aff'd sub. nom. Cross v. S.S. Kaimana, 401 F.2d 182 (9th Cir.1968) (same), cert. denied, 393 U.S. 1095, 89 S.Ct. 879, 21 L.Ed.2d 785 (1969). Nor did their entitlement to benefits from the fund, in turn, depend upon whether the employer met its obligation to make the payments.
 
 
 19
 The foregoing also highlights considerations, absent here, which weighed against granting the severance pay in HMO and Mammoth Mart first priority as administrative expense. Because the indebtedness represented by the post filing payments here plainly is not a pre-filing wage indebtedness, Embassy Restaurant, 359 U.S. at 35, 79 S.Ct. at 557, the obligation to pay, if not an administrative expense, must be treated as any other pre-petition debt. We thus lack the option available to the courts in HMO and Mammoth Mart to grant the payments second priority under section 64(a)(2) of the old Act. We also do not face the corresponding concern of the courts in those cases that payments, such as wages, which Congress intended to receive second priority not be recovered as administrative expense. Mammoth Mart, 536 F.2d at 955-56; cf. Otte v. United States, 419 U.S. 43, 57, 95 S.Ct. 247, 256, 42 L.Ed.2d 212 (1974) (withholding taxes should not be treated differently from the wages upon which they are based). Holding that the payments are administrative expense could therefore not frustrate Congress' ordering of priorities.
 
 
 20
 In the last analysis, we observe that the result reached by the district court here serves Congress' intent to authorize administrative expense payments where third persons should be encouraged to deal with the bankrupt estate, since these payments promoted continued performance under a labor agreement. See Mammoth Mart, 536 F.2d at 954. We therefore conclude that the payments to PMA were properly permitted in full as administrative expense arising after the filing of the petition.
 
 
 21
 Affirmed.
 
 
 
 *
 Honorable John Minor Wisdom, Senior Circuit Judge, United States Court of Appeals for the Fifth Circuit, sitting by designation
 
 
 [1]
 The former Bankruptcy Act remains applicable to cases in which the original petition was filed before October 1, 1979. See P.L. No. 95-598, title IV, § 402, 92 Stat. 2682 (1978)
 
 
 [2]
 Vacation plan payments are made on the tenth of each month but are based on advance estimates which are reconciled on the twentieth