In re AMAREX, INC., Debtor.

Robert O. ISAAC, Appellee,

v.

TEMEX ENERGY, INC., Successor by Merger to Amarex, Inc., Appellant.

No. 85–2155.

United States Court of Appeals, Tenth Circuit.

July 29, 1988.

Hugh D. Rice, Rainey, Ross, Rice & Binns, Oklahoma City, Okl. (Robert J. Campbell, Jr., Rainey, Ross, Rice & Binns, and Richard E. Coulson, Kline & Kline, Oklahoma City, Okl., with him on the briefs), for appellant, Amarex, Inc.

Robert O. Isaac, Dallas, Tex., pro se.

Before HOLLOWAY, ANDERSON, Circuit Judges, and SAFFELS,* District Judge.

STEPHEN H. ANDERSON, Circuit Judge.

Amarex, Inc., the debtor,[1] appeals from an order of the United States District Court for the Western District of Oklahoma holding that a claim for a one-year $10,000 bonus pursuant to an employment contract between Amarex and Robert O. Isaac is entitled to priority of payment in its entirety as an administrative expense under 11 U.S.C. § 503(b)(1)(A). The bankruptcy court determined that only that portion of the bonus attributable to services performed for Amarex subsequent to the commencement of Chapter 11 proceedings was entitled to priority. The district court reversed, holding that the entire amount should be afforded priority. For the reasons set forth below, we reverse the district court decision.

## BACKGROUND

Isaac commenced work as general counsel for Amarex on March 29, 1982. He had previously been employed by a Houston, Texas company, where he earned $66,000.00 per year. In February 1982, Isaac expressed an interest to Peter McCook, the Senior Vice President of Administration at Amarex, in working for Amarex earning

---

* The Honorable Dale E. Saffels, U.S. District Court, Kansas, sitting by designation.

1. Temex Energy, Inc. is the successor by merger to Amarex, Inc. Consistent with the briefs of the parties, we refer to the debtor as Amarex throughout this opinion.

"the same amount that [he] had been making." R. Vol. II at 9. Isaac testified at the hearing on his application for payment of the bonus that, while McCook informed him that Amarex could not pay him a salary of $66,000 per year, "he suggested that I be paid at the package total $65,000.00 So we did it in a manner of $55,000.00 annual salary with $10,000.00 guaranteed bonus at the end of one year's service. I think that it was an alternative way of compensating me as I had been." *Id.*

A February 23 letter from McCook to Isaac stated as follows:

This letter is to confirm the terms, which we discussed, of your employment with Amarex.

1. Employment with Amarex as Corporate Counsel to begin on March 29, 1982.

2. *Base compensation of $55,000.00 a year.*

3. *Guaranteed annualized bonus of $10,000.00 for first year.* Yearly bonuses are discretionary and are based on corporate earnings and performance. High performance bonuses have been in the range of 40% to 50% of base compensation.

\* \* \* \* \* \*

As I mentioned, an officer of Penn Square Bank has indicated that they would make a 2–year 90% loan on the home you purchased in Oklahoma City. The rate of interest would be prime and interest only could be paid for 2 years. In order to assist you with the interest differential you may have on your home, *an advance against your first bonus payment will be made each month— such advance will be equal to the interest differential based on your existing mortgage.*

R. Vol. I at 126–27 (emphasis added). Isaac never took advantage of the offer of monthly advances against his first bonus payment.

On December 2, 1982, during Isaac's first year of employment with Amarex, the company was placed into involuntary bankruptcy under Chapter 7, subsequently converted to Chapter 11. On December 23, 1982, the bankruptcy court entered an "Order Directing Consolidation For Administrative Purposes and Authorizing Operations Of Businesses" providing in pertinent part as follows:

(4) That pending further Order of this Court, the Debtors-in-Possession are authorized to continue compensation of their employees, officers, and supervisors at the same rates as they were paid on the date of the filing of the petitions herein; (5) That without in any way limiting the generality of the foregoing, the Debtors-in-Possession shall have full power and authority until further Order of this Court ... (b) to pay and satisfy out of any funds now or hereafter coming into their possession all claims for wages, salaries, and compensation of all officers, managers, agents, employees and servants for services hereafter rendered.

R. Vol. I at 1–2.

Isaac continued to work for Amarex until February 21, 1984, and continued to receive compensation for his services, except for the $10,000 bonus, which was never paid. Accordingly, on February 2, 1984, Isaac filed an Application for Establishment and Payment of Compensation As An Administrative Expense in the bankruptcy court. He sought an order compelling payment of the $10,000 bonus as a priority expense of administration under 11 U.S.C § 503.[2]

After initially entering a conditional order approving payment as an administrative expense of the full amount of the bonus, the bankruptcy court, after a hearing on the Application, entered an order finding that the bonus was a part of Isaac's salary for his first year of employment and that only that portion of the bonus which was attributable to services performed after Amarex went into Chapter 11 was entitled to priority as an administrative expense. The court determined that amount to be $3,230.00. R. Vol. I at 96.

---

2. He also argued that his employment contract, including the $10,000 bonus provision, was implicitly assumed by Amarex's continuation of his services post-petition. Both the bankruptcy court and the district court rejected that argument and Isaac does not pursue it on appeal. Brief of Appellee at 3.

Isaac appealed to the district court, which entered an order on February 21, 1985 reversing the bankruptcy court decision and remanding for further proceedings. The district court held that the entire bonus was entitled to priority under § 503(b)(1)(A) as an administrative expense because it was wholly earned postpetition. The pertinent part of the district court opinion states as follows:

While it is not clear from the [bankruptcy court] order, apparently the Court determined that the bonus was earned on a day to day basis and, therefore, only the portion attributable to the period from the filing of the petition on December 2, 1982, until completion of one year's employment in April 1983 was entitled to priority. We do not agree that this bonus was earned on a day to day basis.... As the bankruptcy court noted, it is clear that Isaac would not have been entitled to the bonus, nor any part of it, had he not completed one year of service. Therefore, when the Chapter 11 petition was filed in December 1982, Isaac had no claim against the estate. When the Court entered its Operating Order, it allowed Isaac to continue his employment at the same rate of compensation. Amarex admitted that in this particular case the language of the operating order was broad enough to encompass the $10,000 bonus. It was the services which Isaac rendered to the debtor-in-possession which entitled Isaac to the entire $10,000 bonus not pre-petition services to Amarex. Claims for services rendered to a debtor-in-possession are entitled to administrative priority under section 503(b)(1)(A).

R. Vol. I at 188–91. The court then denied Amarex's motion for rehearing.

Amarex argues on appeal that the district court erred in reversing the bankruptcy court finding that Isaac's bonus was earned for services performed throughout his first year and that, as a result, only a portion of the bonus was entitled to priority as an administrative expense under section 503(b)(1)(A).[3] Amarex seeks to have the bankruptcy court decision affirmed.

Isaac argues that the district court correctly interpreted the employment contract as a matter of law, and, to the extent it reviewed any factual findings of the bankruptcy court, it correctly applied the clearly erroneous rule. He further argues that "the District Court properly determined that the entire bonus was due Isaac as a priority payment based upon the debtor-in-possession's agreement under the Operating Order to allow Isaac to continue his employment with the debtor-in-possession at the same rate of compensation as provided in the contract." Brief of Appellee at 6.

## DISCUSSION

■■■ Interpretation of an unambiguous contract is a question of law and is therefore reviewable de novo on appeal. *See NRM Corp. v. Hercules, Inc.*, 758 F.2d 676, 682 (D.C.Cir.1985); *Paragon Resources, Inc. v. Nat'l Fuel Gas Distrib. Corp.*, 695 F.2d 991, 995 (5th Cir.1983); *Jaeco Pump Co. v. Inject-O–Meter Mfg. Co.*, 467 F.2d 317, 320 (10th Cir.1972); *see also Branding Iron Motel, Inc. v. Sandlian Equity, Inc.*

3. As a preliminary issue, Amarex argues that the district court erred in looking beyond the written order of the bankruptcy court and concluding that the bankruptcy court made a finding that no part of the bonus would have been payable to Isaac if he failed to complete his first year of employment. The bankruptcy court's written order contained no such finding, but Amarex argues that the district court inferred such a finding from certain oral statements made by the bankruptcy judge during the hearing on Isaac's Application. Even if the bankruptcy court in fact made such a finding, Amarex argues it would be "clearly erroneous." In view of our resolution of this case, we need not consider whether the district court erred in looking beyond the bankruptcy court's written

order. More importantly, we agree with Amarex that the bankruptcy court's written order neither explicitly nor implicitly made a finding that no part of the bonus would have been payable had Isaac failed to complete his first year of employment. Indeed, it is arguably implicit in the bankruptcy court's order that Isaac *would* have been entitled to claim a portion of the bonus had he quit his employment prior to completion of that first year. In any event, our decision in this case does not compel us to overrule as clearly erroneous a factual finding by the bankruptcy court concerning Isaac's entitlement to a portion of his bonus upon failure to complete his first year with Amarex.

*(In re Branding Iron Motel, Inc.)*, 798 F.2d 396, 399–400 (10th Cir.1986) (questions of law in bankruptcy context reviewable de novo). The determination of ambiguity of a contract is similarly a question of law. *See Metro. Paving Co. v. City of Aurora*, 449 F.2d 177, 181 (10th Cir.1971). Only in the event of ambiguity does a court resort to extrinsic evidence. *Paragon Resources*, 695 F.2d at 995; *Metro. Paving*, 449 F.2d at 181. To the extent the bankruptcy court made any factual findings in interpreting the contract, such findings are subject to the clearly erroneous standard of appellate review, both by the district court and by this court. *Branding Iron Motel, Inc.*, 798 F.2d at 399; *In Re White House Decorating Co., Inc.*, 607 F.2d 907, 910 (10th Cir. 1979); Bankr. Rule 8013; *see also Haskins v. United States (In re Lister)*, 846 F.2d 55, 56 (10th Cir.1988). With those standards of review in mind, we turn to the employment agreement in this case, which Isaac argues entitles him to payment of his entire $10,000 bonus as an administrative expense.

11 U.S.C. § 503(b) provides in pertinent part:

(b) After notice and a hearing, there shall be allowed, administrative expenses ... including—

(1)(A) the actual, necessary costs and expenses of preserving the estate, including wages, salaries, or commissions for services performed after the commencement of the case;

Pursuant to 11 U.S.C. § 507(a)(1) and § 726(a)(1), administrative expenses allowed under § 503(b) are entitled to priority.

As the district court correctly noted, the burden of proving entitlement to a priority is on the person claiming priority. *See In re O.P.M. Leasing Servs., Inc.*, 60 B.R. 679, 680 (Bankr. S.D.N.Y.1986); *Central Rubber Prods., Inc. v. Stafford Higgins Indus., Inc. (In Re Central Rubber Prods.)*, 31 B.R. 865, 870 (Bankr. Conn.1983).

"[A]n expense is administrative only if it arises out of a transaction between the creditor and the bankrupt's trustee or debtor in possession (citations omitted) and 'only to the extent that the consideration supporting the claimant's right to payment was both supplied to and beneficial to the debtor-in-possession in the operation of the business.' A debt is not entitled to priority simply because the right to payment arises after the debtor in possession has begun managing the estate." *Trustees of Amalgamated Ins. Fund v. McFarlin's*, 789 F.2d 98, 101 (2d Cir.1986) (quoting *In re Mammoth Mart, Inc.*, 536 F.2d 950, 954 (1st Cir.1976)) (citations omitted);[4] *see also Matter of Jartran*, 732 F.2d 584, 587 (7th Cir.1984) ("To serve the policy of the priority, inducement of the creditor's performance *by the debtor-in-possession* is crucial to a claim for administrative priority in the context of the furnishing of goods or services to the debtor."). Statutory priorities are to be narrowly construed "[b]ecause the presumption in bankruptcy cases is that the debtor's limited resources will be equally distributed among his creditors." *Trustees of Amalgamated Ins. Fund*, 789 F.2d at 100; *see also Matter of Jartran*, 732 F.2d at 586–87.

Both parties concede that no cases directly address the issue before us. There are numerous cases, however, involving the extent to which other forms of compensation, such as severance and vacation pay or com-

---

**4.** *Mammoth Mart* is widely cited as establishing the appropriate test for determining eligibility for administrative expense priority. The First Circuit in *Mammoth Mart* stated as follows:

For a claim in its entirety to be entitled to first priority under § 64(a)(1) [the predecessor to § 503(b)(1)(A)], the debt must arise from a transaction with the debtor-in-possession. When the claim is based upon a contract between the debtor and the claimant, the case law teaches that a creditor's right to payment will be afforded first priority only to the extent that the consideration supporting the claimant's right to payment was both supplied to and beneficial to the debtor-in-possession in the operation of the business.

536 F.2d at 954; *see also Trustees of Amalgamated Ins. Fund v. McFarlin's*, 789 F.2d 98 (2d Cir.1986); *Matter of Jartran*, 732 F.2d 584 (7th Cir.1984); *Wyle v. Pac. Maritime Ass'n (Matter of Pacific Far East Line, Inc.)*, 713 F.2d 476 (9th Cir.1983); *Lines v. Sys. Bd. of Adjustment No. 94 (Matter of Health Maintenance Found.)*, 680 F.2d 619 (9th Cir.1982); *Guar. Nat. Ins. Co. v. Greater Kansas City Transp., Inc.*, 90 B.R. 461 (D.Kan.1988).

missions, are entitled to priority as an administrative expense. Given the policies behind the priority accorded administrative expenses, noted above, the resolution of these cases largely turns on the nature of the pay or claim—severance or vacation, for example—under dispute. *See Trustees of the Amalgamated Ins. Fund,* 789 F.2d at 104 ("These decisions [holding that obligation to pay severance pay is administrative expense entitled to priority] rest on the basis that severance pay is compensation for the hardship which all employees, regardless of their length of service, suffer when they are terminated and that it is therefore 'earned' when the employees are dismissed.... Indeed, it appears to be the general rule that when severance pay, like vacation pay, represents compensation for the employee's past services it is not an administrative expense entitled to priority."); *see also Matter of Jartran,* 732 F.2d at 590 n. 6; *Matter of Pacific Far East Line, Inc.,* 713 F.2d 476, 478 (9th Cir.1983); *In re Health Maintenance Found.,* 680 F.2d 619, 621–22 (9th Cir.1982); *Mammoth Mart,* 536 F.2d at 955; *Denton & Anderson Co. v. Induction Heating Corp.,* 178 F.2d 841 (2d Cir.1949); *In re St. Louis Globe–Democrat, Inc.,* 86 B.R. 606 (Bankr. E.D.Mo.1988).[5]

■ Furthermore, the right to priority does not necessarily depend on the fact that the obligation to pay the bonus did not arise until after the commencement of bankruptcy proceedings. As the cases indicate, what is crucial is what *consideration* supports the bonus, and whether such consideration, or a portion of it, was pre-petition services. *See Christian Life Center Litigation Defense Comm. v. Silva (In re Christian Life Center),* 821 F.2d 1370, 1374 (9th Cir.1987) ("It makes no difference that the duty to indemnify Argue for litigation expenses, if such duty exists, did not accrue until after the petition was filed ... the critical fact is that the claim for indemnity arose from prepetition services Argue provided the corporation."); *see also Trustees of Amalgamated Ins. Fund,* 789 F.2d at 101; *In re Health Maintenance Found.,* 680 F.2d at 621; *Matter of Jartran,* 732 F.2d at 586–90; *Guar. Nat. Ins. Co. v. Greater Kansas City Transp., Inc.,* 1988 U.S.Dist.Lexis 4973 (D.Kan.1988); *In re Chicago Lutheran Hosp. Ass'n.,* 75 B.R. 854, 856 (Bankr.N.D.Ill.1987).

■ In this case, the terms of the employment agreement are clear. Isaac was to receive $55,000 as a base salary and a "guaranteed annualized bonus" of $10,000. The bankruptcy court concluded that the guaranteed bonus was part of Isaac's agreed salary, and was earned day by day during that first year. We agree.[6] We find that the term "guaranteed annualized bonus" supports such a conclusion. Furthermore, the offer to permit Isaac to draw

5. We note that there is some disagreement among circuit courts concerning the extent to which severance pay should be accorded priority as an administrative expense. *Compare Trustees of Amalgamated Ins. Fund,* 789 F.2d at 104; *In re W.T. Grant Co.,* 620 F.2d 319, 320–21 (2d Cir.1980), *cert. denied,* 446 U.S. 983, 100 S.Ct. 2963, 64 L.Ed.2d 839 (1980); *Matter of Unishops, Inc.,* 553 F.2d 305, 308 (2d Cir.1977); *Straus–Duparquet, Inc. v. Local Union No. 3 Int'l. Bhd. of Elec. Workers,* 386 F.2d 649, 650–51 (2d Cir.1967); *In re St. Louis Globe–Democrat, Inc.,* 86 B.R. 606 (Bankr.E.D.Mo.1988) (all holding that severance pay as compensation for the hardship suffered upon termination is entitled to priority in its entirety as an administrative expense) *with Matter of Far East Pacific Line, Inc.,* 713 F.2d 476, 478 (9th Cir.1983); *In re Health Maintenance Found.,* 680 F.2d 619, 621–22 (9th Cir.1982); *Mammoth Mart,* 536 F.2d at 953 (1st Cir.1976); *In re Public Ledger,* 161 F.2d 762, 771–73 (3d Cir.1947); *Rawson Food Servs., Inc. v. Creditors' Comm.,* 67 B.R. 351 (M.D.Fla. 1986) (all holding that severance pay as compensation for past services is only entitled to priority to the extent it can be apportioned to services performed post-petition); *see also generally* 3 *Collier on Bankruptcy* ¶ 503.04(iii) (15th ed. 1988). Vacation pay is generally viewed as accruing on a daily basis and thus is entitled to priority only to the extent attributable to post-petition services for the benefit of the estate. *See Trustees of Amalgamated Ins. Fund,* 789 F.2d at 104 (and cases cited therein.) The dispute about the proper treatment of severance pay, however, revolves largely around the definition of severance pay. Even the Second Circuit appears to agree that, to the extent severance pay "represents compensation for the employee's past services it is not an administrative expense entitled to priority." *Id.* at 104.

6. Even were we to conclude that the employment agreement was ambiguous, as neither the bankruptcy court nor the district court specifically did, we would find the bankruptcy court's interpretation, and ours, supported by extrinsic

a monthly "advance" against the bonus suggests that the bonus was intended to be a part of Isaac's salary and therefore accrued throughout the year. We decline to view the bonus as being "earned" only upon completion of the first year of employment. Rather, we view it as being earned throughout the first year, but payable only upon completion of that year. Accordingly, only that portion of the bonus attributable to services performed postpetition is entitled to priority of payment as an administrative expense under § 503(b)(1)(A). Only those services were "consideration supporting ... the claimant's [Isaac's] right to payment ... both supplied to and beneficial to the debtor-in-possession in the operation of the business." *Mammoth Mart*, 536 F.2d at 954.[7]

For the foregoing reasons, the decision of the district court reversing the order of the bankruptcy court is REVERSED.

---

evidence in the record. Isaac's own testimony before the bankruptcy court concerning his salary negotiations with McCook was as follows:

> In talking to Mr. McCook, I told him that I could not come to work for Amarex except on a lateral basis, that I would be willing to take the some [sic] amount that I had been making. He informed me that to pay me that kind of salary would be difficult because there were certain Vice–Presidents at Amarex who were making $65,000, and that in order to pay me that, he felt as though he was going to have to create a vice-presidency and he was not empowered to do so. As an alternative, he suggested that I be paid at the package total $65,000. So we did it in a manner of $55,000 annual salary with $10,000 guaranteed bonus at the end of one year's service. I think it was an alternative way of compensating me as I had been.

R. Vol. II at 9. This strongly suggests that the bonus was simply intended to be part of Isaac's salary, earned on a daily basis, but a part that was not to be paid until the end of the first year.

7. Isaac also asserts that the district court order could be construed as properly holding that he was entitled to the entire bonus as a priority payment because, under the Operating Order, the debtor-in-possession agreed to continue compensating employees at the same rate as before and Isaac's performance of services for the debtor-in-possession for fourteen months qualifies him for the entire bonus. We are unpersuaded for two reasons. First, although the District Court's Minute Order denying Amarex's Motion for Rehearing is not included in the record on appeal, Amarex quotes several sentences from it which suggest that Isaac's argument on this point did not form the basis for the district court's holding. The district court declared it was "not convinced Appellant's bonus was earn[ed] on [a] mon[th] by mon[th] basis.... [No portion of the] bonus was earned until [the] entire unit of service was performed, which event occurred after [the] filing of [the] bankruptcy petition." Reply Brief of Appellant at 13. Second, we find no evidence indicating that the Operating Order should be construed to alter the employment agreement between Amarex and Isaac so as to start anew the time from which Isaac's bonus should be calculated. *See In re St. Louis Globe–Democrat, Inc.*, 86 B.R. 606, 608 ("Such a conclusion must rest, if at all, on the discredited theory that a Chapter 11 debtor is a wholly new entity and that, therefore, the employment relation commenced anew with the filing of the case. Instead, this Court concludes that 'it is sensible to view the debtor-in-possession as the same "entity" which existed before the filing of the bankruptcy petition, but empowered by virtue of the Bankruptcy Code to deal with its contracts and property in a manner it could not have employed absent the bankruptcy filing.'" (quoting *NLRB v. Bildisco*, 465 U.S. 513, 528, 104 S.Ct. 1188, 1197, 79 L.Ed.2d 482 (1984))).