**In re RAWSON FOOD SERVICES, INC., Debtor.**

**Bankruptcy No. 86–174–BK–J–GP.**

United States Bankruptcy Court, M.D. Florida, Jacksonville Division.

May 23, 1986.

Stephen Busey, Jacksonville, Fla., for debtor.

Ronald Bergwerk, Jacksonville, Fla., for Unsecured Creditors' Committee.

## MEMORANDUM ORDER PROHIBITING PAYMENT OF SEVERANCE BENEFITS AND MEDICAL INSURANCE PREMIUMS AS AN ADMINISTRATIVE EXPENSE

GEORGE L. PROCTOR, Bankruptcy Judge.

Debtor, Rawson Food Services, Inc., filed for relief under 11 U.S.C. Chapter 11 on February 19, 1986, and has been operating as a debtor-in-possession. In conjunction with the filing of the petition, debtor filed a motion for authorization to sell substantially all its assets to Super Valu Stores, Inc., pursuant to 11 U.S.C. § 363. The Court approved this sale on March 27, 1986, based in part on the following findings: (1) debtor's intention to liquidate the estate rather than reorganize; (2) wasting of assets; and (3) immediate sale would attain the greatest return to the estate. Certain key employees were retained by debtor post-petition to maximize the inventory being sold to Super Valu by conducting liquidation sales and winding up the debtor's operation in an orderly and expeditious fashion.

On March 14, 1986, debtor reaffirmed its obligations under an existing severance program established in September, 1985, with the goal of retaining key employees to substantially complete the Super Valu sale. This severance program awarded each key employee benefits based upon the length of continuous employment with Rawson Food Services, Inc., and its predecessor, Pantry Pride Enterprises, Inc. The employees were terminated approximately seven to ten days later.

The matter before the Court is debtor's motion for authorization to pay as an administrative expense of the estate pursuant to 11 U.S.C. § 503(b)(1)(A) severance benefits to and related medical insurance premiums for these certain non-union key supervisory and management employees who were retained by debtor and then terminated post-petition. The Official Unsecured Creditors' Committee opposes this motion as being violative of 11 U.S.C. § 503(b)(1)(A) in that the services rendered as consideration for the severance benefits were pre-petition services and that the severance program is an executory contract which debtor has not assumed and which is burdensome to the estate.

In support of its position, debtor relies on the decisions of the Second Circuit Court of Appeals which find that an obligation to pay severance pay, arising out of the termination of an employee post-petition, constitutes a cost of doing business and as such

is an administrative expense entitled to priority. *Trustees of the Amalgamated Insurance Fund v. McFarlin's Inc.*, 789 F.2d 98 (2d Cir.1986); *In re W.T. Grant Co.*, 620 F.2d 319 (2d Cir.1980), *cert. denied*, 446 U.S. 983, 100 S.Ct. 2963, 64 L.Ed.2d 839 (1980); *Straus-Duparquet, Inc. v. Local U. No. 3 Int. Bro. of Elec. Wkrs.*, 386 F.2d 649 (2d Cir.1967). The rationale supporting these decisions is that severance pay does not accrue but is "[c]ompensation for the hardship which all employees, regardless of their length of service, suffer when they are terminated ..." and as such is earned on the day of termination. *McFarlin's Inc., supra*, 785 F.2d at 104. The Second Circuit does recognize however that the weight of authority is that if severance benefits represent compensation for services of an employee performed over the entire length of employment, such benefits are not an administrative expense entitled to priority. *Id.*; Cf. *Matter of Health Maintenance Foundation*, 680 F.2d 619, 621–22 (9th Cir.1982); *In re Mammoth Mart, Inc.*, 536 F.2d 950, 955 (1st Cir.1976); *In re Public Ledger, Inc.*, 161 F.2d 762, 773 (3d Cir.1947).

■ The distinguishing factor between the Second Circuit's minority position and the majority position is the time that consideration is tendered for the severance benefits. If the transaction creating the claim arises between the claimant and the debtor-in-possession and the consideration supporting the claim was tendered to and beneficial to the estate then the claim is entitled to priority as an administrative expense. *McFarlin's Inc., supra*, 789 F.2d at 101; *Mammoth Mart, supra*, at 955. Section 503(b)(1)(A) limits priority administrative expenses to "the actual, necessary costs and expenses of preserving the estate, including wages, salaries, or commissions for services rendered after the commencement of the case." 11 U.S.C. § 503(b)(1)(A).

■ The consideration tendered to debtor for the subject severance benefits was the years of loyal service by these key employees to Rawson Food Services, Inc., and to its predecessor, Pantry Pride Enterprises, Inc. Only if the employee provided a certain amount of continuous service was he/she entitled to the severance benefits. This direct correlation between the amount of benefits and the length of service demonstrates the fact that the severance benefits accrued and were in actuality a "form of remuneration" for services rendered over the entire length of employment. See *Matter of Pacific Far East Line, Inc.*, 713 F.2d 476, 478 (9th Cir.1983).

Debtor's termination of these key employees post-petition does not automatically convert this debt into an administrative expense. "A debt is not entitled to priority simply because the right to payment arises after the debtor-in-possession has begun managing the estate." *McFarlin, supra*, 789 F.2d at 101. At the hearing, debtor acknowledged that it felt a moral obligation to these key employees and that it wanted to treat them as fairly as it had treated employees who were terminated pre-petition. Clearly, all parties understood that it was the pre-petition services which had earned the severance benefits, not the services which were performed for the debtor post-petition. Since these pre-petition services were not performed for the debtor-in-possession and were not beneficial to the estate, the severance benefits arising from these services are not entitled to priority payment as an administrative expense.

■ Debtor also contends that its reaffirmation of the severance program on March 14, 1986, *induced* the employees to remain on the job and that this post-petition promise and the subsequent services performed constitutes adequate consideration for the severance benefits. See *Mammoth Mart, supra*, at 955, fn. 14. This announcement was made in response to various inquiries and at a time when only one week of work remained. The Court finds it implausible that this announcement *induced* the key employees to work that final week. The evidence shows that the key employees were loyal to debtor and that they intended from the very start to

remain with debtor throughout the bankruptcy proceeding. Even if the Court accepted debtor's contention, the consideration of one week of services is totally inadequate to support the claims for severance benefits.

Accordingly, the Court denies debtor's motion for authority to pay the severance benefits as an administrative expense of the estate pursuant to 11 U.S.C. § 503(b)(1)(A). Each claimant is given forty-five (45) days from the date of this Order to file a proof of claim for the severance benefits owed.