**In re C.M. SYSTEMS, INC., Debtor.**

**Bankruptcy No. 86–1643–8P1.**

United States Bankruptcy Court,
M.D. Florida,
Tampa Division.

Aug. 11, 1988.

See also 87 B.R. 707.

Leo Meirose, St. Petersburg, Fla., for debtor.

Lyle Charles, Inc., Tampa, Fla., Trustee for debtor.

C. Stephen Allen, Tampa, Fla., for trustee.

John D. Emmanuel, Tampa, Fla., for Capital America, Inc.

## ORDER ON REQUEST FOR PAYMENT OF ADMINISTRATIVE EXPENSE BY CAPITAL AMERICA, INC.

ALEXANDER L. PASKAY, Chief Judge.

THIS CAUSE came on for hearing with notice to all parties in interest upon an Amended Administrative Proof of Claim, treated as a Motion for Payment of Administrative Expense filed by Capital America, Inc. (Capital America), creditor in the above-captioned Chapter 11 case. The Court has considered the Motion, together with an Objection to the Motion filed by Lyle Charles, Inc. (Trustee), Trustee for the Debtor, C.M. Systems, Inc. (Debtor), and finds the facts relevant to a resolution of this matter to be as follows:

On February 27, 1985, the Debtor entered into an equipment lease agreement with Capital America. Pursuant to the Agreement, the Debtor agreed to lease eight (8) items of heavy equipment for a period of 60 months at the monthly rate of $19,290.00. The lease in Paragraph 13 provided that the "Lessee shall not assign this lease or any interest hereunder and shall not enter into any sublease with respect to the equipment without Lessor's prior written consent." The same day, the Debtor and Terramar Mining Corporation (Terramar Mining) executed an Equipment Sublease, apparently without the written consent of Capital America. On April 25, 1986, the Debtor filed its Chapter 11 Petition. It appears that on September 18, 1986, Capital America, the Debtor, and Terramar Mining entered into an Assignment and Assumption Agreement wherein the Debtor again purported to assign all its interest in the lease to Terramar Mining, which at that time had already filed its separate Chapter 11 case which is still pending in this Court. Of course, Capital America consented to the assignment through its execution of the Agreement.

The Assignment and Assumption Agreement further provided that the Debtor would remain responsible for all obligations under the lease agreement, that the Agreement was subject to the approval of this Court, and further contained the following provisions:

4. Lessor ... hereby consent[s] to this Assignment and Assumption Agreement, which consent is not intended nor shall it act to release Lessee ... from any liability under the said Lease Agreement, nor shall Lessee ... be released from any obligation in the event that the obligation of Assignee or any other party under the said Lease Agreement on this Assignment and Assumption Agreement is released, modified, renewed or extended.

5. Lessee ... hereby agree[s] and consent[s] to modification of the term of the Lease Agreement and the monthly rental payments as set forth more fully in Paragraph 8 herein.

8. Assignee acknowledges that the Lease is non-cancellable for the remaining term, ... that there are 61 rental payments to be paid on said Lease at $15,561.65 ... and that the remaining 61 rental payments would be made in the reduced amount of $15,561.65.

It is without dispute that Terramar Mining took possession of the equipment, although it is unclear whether Terramar received possession immediately after the February 27, 1985 sublease or after the September 18, 1986 Agreement. Although the Debtor filed a Motion for Approval of the Assignment and Assumption Agreement, a Trustee was appointed in this case before the Motion was considered by this Court and the Court subsequently denied the Motion without prejudice to the Trustee to seek approval of the Assignment and Assumption Agreement. It should be noted that the Trustee never filed a motion for approval of the Assignment and Assumption Agreement, and further, the underlying lease agreement was never rejected or assumed.

Based on the foregoing facts, Capital America filed its Motion on April 7, 1988, contending that it is entitled to the allowance of an administrative expense in the total amount of $130,469.14, which is comprised of $116,931.58 for unpaid lease payments for the period from April 26, 1986, through November 15, 1986, that is, for the post-petition use of the leased equipment and $13,537.56 for unpaid adequate protection payments owing pursuant to a previous order entered by this Court.

In opposition to Capital America's contentions, the Trustee argues that Capital America is first estopped as to its claim against the Debtor as it was aware that the Debtor was in financial jeopardy when it entered into the lease agreement, and thereby Capital America entered into the Agreement at its own risk. Second, the Trustee contends that Capital America waived its rights against the Debtor as it was aware at the time of entering into the lease that the equipment was to be subleased to another corporation. Third, the Trustee argues that the claim should not be allowed based on the equitable principle of laches. Finally, the Trustee contends that the parties entered into a novation by way of the Assignment and Assumption Agreement and, therefore, assuming the amended claim for administrative expense is allowed, the proper period for the expense allowance would be from April 26, 1986, through September 18, 1986, at the monthly rate of $19,290.00, and from September 19, 1986—November 15, 1986, at the monthly rate of $15,561.65.

§ 503(b)(1)(A) of the Bankruptcy Code which governs the payment of administrative expenses provides in pertinent part as follows:

§ 503. Allowance of Administrative expenses

(b) After notice and a hearing, there shall be allowed administrative expenses ... including

(1)(A) the actual, necessary costs and expenses of preserving the estate....

Considering first the Trustee's contentions, this Court is satisfied that the assumption of risk, waiver, and laches arguments are totally without merit. There is no statutory mandate or policy which

requires a lessor to forego the right to an administrative expense if it has knowledge that the lessee may be financially unsound. Further, as the Debtor was, in any event, to remain liable to Capital America under the sublease, the Trustee can not make a viable argument that because of its knowledge that the equipment would be subleased, Capital America waived its rights as to the Debtor. Next, no plan in this case has been confirmed, and there is no other evidence in this record which would lead this Court to find that Capital America has been "sleeping on its rights"; thus, the Trustee's argument of laches is unfounded. Finally, the Trustee's argument that a novation occurred when the parties executed the Agreement is not well taken as the Agreement was expressly conditioned on this Court's approval, which, of course, is mandated by § 363(b)(1) of the Bankruptcy Code, which mandates that only after notice and hearing can property be leased or in turn subleased out of the ordinary course of business.

Even assuming the Court had approved the Agreement, the Trustee's argument would be without merit. Whether a novation as to the amount of payment due occurred at the time the parties executed the sublease depends on whether the parties intended the new agreement to be the "discharge of a valid existing obligation by the substitution of a new valid obligation," *Taines v. Capital City First National Bank*, 344 So.2d 273, 276 (Fla. 1st DCA 1977) and its existence is controlled by the intent of the parties. *Don L. Tullis and Associates, Inc. v. Benge*, 473 So.2d 1384 (Fla.App. 1st DCA 1985). It is now well established that a novation consists of an agreement extinguishing an old debt and another substituting a new debt in place of the old debt. *Id.* The express language of the Agreement states that the Assignment did not release the Debtor of any obligations under the lease. Thus, there is no evidence in the record reflecting the parties' intent to extinguish the obligations set forth in the Lease Agreement.

Without doubt, C.M. Systems did not have actual, physical possession of the equipment post-petition, and clearly a creditor is not entitled to an administrative claim where the Debtor or Trustee has made no use at all of the leased equipment. *See Broadcast Corporation of Georgia v. Broadfoot*, 54 B.R. 606 (N.D.Ga.1985), aff'd 789 F.2d 1530 (11th Cir.1986). *See also, In re C.M. Systems*, 86 B.R. 286 (Bkrtcy.M.D.Fla.1988).

However, as this Court has held earlier in this case, although the Debtor did not physically use the equipment to continue its business, its unauthorized sublease of the equipment to Terramar was essentially the use of the equipment to generate funds for operating its business even though this sublease was without court approval. Therefore, this Court is satisfied that the Debtor's lease of the equipment was an actual and necessary cost of preserving the estate. *See In re C.M. Systems, supra.*

Accordingly, it is

ORDERED, ADJUDGED AND DECREED that the Amended Administrative Proof of Claim, treated as a Motion for Payment of Administrative Expense be, and the same is hereby, granted. It is further

ORDERED, ADJUDGED AND DECREED that Capital America be, and the same is hereby, entitled to an administrative expense in the amount of $130,469.14, which shall be accorded a first priority pursuant to § 507(a)(1) of the Bankruptcy Code.