## In re APOLLO MOVING SPECIALISTS OF DAYTONA BEACH, INC., Debtor.

**Bankruptcy No. 90–3822–BKC–3P1.**

United States Bankruptcy Court, M.D. Florida, Jacksonville Division.

Feb. 25, 1992.

Albert A. Mickler, Jacksonville, Fla., for debtor.

James Edward Cheek, III, Orlando, Fla., for Mayflower Transit Co., Inc.

## FINDINGS OF FACT AND CONCLUSIONS OF LAW

GEORGE L. PROCTOR, Bankruptcy Judge.

This case came to be heard upon the Motion for Allowance of Administrative Expense filed by Mayflower Transit Co., Inc. ("Mayflower"). Hearings were held on November 26, 1991, and December 12, 1991. Upon the evidence presented, the Court makes the following Findings of Fact and Conclusions of Law:

### Findings of Fact

Debtor, a closely held corporation, is engaged in the business of interstate moving of household goods, and on May 4, 1990, it became an agent of Mayflower.

As an agent, debtor would provide booking and hauling services for Mayflower's customers. The agency relationship was governed by various contractual documents, including the Mayflower Policies and Procedures Manual ("Manual").

The Manual required that documentation of a load hauled by debtor was to be forwarded to Mayflower's offices as soon as the job was completed. Mayflower would then credit the appropriate commission to the agent's account. Any checks debtor received from customers made payable to Mayflower were to be immediately forwarded and not deposited into the agent's own bank account.

Each month the Mayflower accounting department issued a Statement of Payable and Expense Accounts to debtor. The Statement detailed credits and debits made to debtor's account for the month. Commissions and rebates for booking, packing, and transportation services were among some of the credits listed. Expenses included state tax stamps, state fuel taxes,

uniform charges, computer charges, and cash advances to drivers on debtor's behalf, as well as fines and fees assessed according to the Manual.

Debtor experienced tax problems that ultimately led it to file chapter 11 on September 21, 1990.

Post-petition debtor continued to perform both booking and hauling functions as an agent of Mayflower. Debtor collected the proceeds from post-petition moves, but did not forward any of the funds to Mayflower. Instead, the monies were deposited into debtor's bank account and used to operate its business.

Subsequent to the bankruptcy filing, Mayflower sought relief from the automatic stay in order to terminate the agency relationship. By mutual consent an order was entered ending the agency relationship effective January 18, 1991.

According to debtor's post-petition audit of Mayflower, debtor was due $119,825.27 for post-petition moving jobs. In addition, there were $18,539.82 in charges owed by debtor to Mayflower, leaving a balance due to debtor of $101,285.45.

The same audit indicates that debtor collected $153,511.89 post-petition, as well as receiving $16,475.00 from Mayflower for drivers' advances. Thus, debtor was paid a total of $169,986.89, or $68,701.44 more than it was due.

Debtor also shows a variety of disputed expenses in the audit totalling $28,601.43. These disputed expenses include general expenses, excess penalty charges, late charges, amounts for services not paid, and excess charges for claims.

The issue before the Court is whether the monies received and retained by debtor post-petition amount to an administrative claim under § 503(b).

### Conclusions of Law

Section 503 governs the allowance of administrative expenses and reads in relevant part:

(b) After notice and a hearing, there shall be allowed administrative expenses, ... including—

(1)(A) the actual, necessary costs and expenses of preserving the estate, including wages, salaries, or commissions for services rendered after the commencement of the case; ....

■ The Eleventh Circuit considered administrative expenses in *In re Subscription Television of Greater Atlanta*, 789 F.2d 1530 (11th Cir.1986), stating:

The priority of an administrative expense is the highest. 11 U.S.C. Section 507(a)(1). The allowance of such a priority is to be carefully considered, only after notice and hearing. 11 U.S.C. Section 503(b). That which is actually utilized by a trustee in the operation of a debtor's business is a necessary cost and expense of preserving the estate and should be accorded the priority of an administrative expense. That which is thought to have some potential benefit, in that it makes a business more salable, may be a benefit but is too speculative to be allowed as an "actual, necessary cost and expense of preserving the estate."

789 F.2d at 1532. Thus, the expense must have bestowed a concrete benefit to the estate in order to be granted administrative priority. *Grantham v. Eastern Marine, Inc.*, 93 B.R. 752, 753–54 (Bankr.N.D.Fla. 1988); *In re O.P.M. Leasing Services, Inc.*, 23 B.R. 104, 121 (Bankr.S.D.N.Y.1982).

This Court considered what gives rise to an administrative expense under § 503(b)(1)(A) in *In re Rawson Food Services, Inc.*, 61 B.R. 207 (Bankr.M.D.Fla. 1986). In the *Rawson* case, this Court concluded that "If the transaction creating the claim arises between the claimant and the debtor-in-possession and the consideration supporting the claim was tendered to and beneficial to the estate then the claim is entitled to priority as an administrative expense." *Id.* at 209.

■ In the case at bar, the transaction underlying the claim is the agency relationship between the debtor and Mayflower. Through such relationship debtor procured various booking and hauling assignments. These assignments were a primary source of income to the debtor, providing the cash

flow necessary for the debtor to sustain its commercial activities. The post-petition monies which debtor received from customers and improperly retained, were used to support the debtor's business operations and thus provided a benefit to the estate.

In *In re C.M. Systems, Inc.*, 89 B.R. 947 (Bankr.M.D.Fla.1988), the court considered a similar situation. In that case an equipment lessor sought administrative priority for unpaid postpetition rents. The debtor had not physically used the equipment, but had subleased it without prior approval. The court concluded that although the equipment had not been operated by the debtor, it had been used to generate funds for the estate. Having benefitted the estate, the underlying lease was an actual and necessary cost of preserving the estate and the unpaid rents were entitled to administrative priority. *Id.* at 950.

As in the *C.M. Systems* case, the debtor used the underlying agency relationship to generate funds for the estate. The funds benefitted the estate and, thus, the amounts due under the agency arrangement are actual and necessary costs of preserving the estate. Consequently, Mayflower is entitled to an administrative expense claim.

The amount of the claim can be determined by referring to the debtor's postpetition audit. The audit reveals that debtor was paid $68,701.44 more than it was entitled to receive post-petition. In addition, debtor disputes $28,601.43 in expenses charged to its account after the filing of the bankruptcy. Giving the debtor the benefit of the disputed claims, a balance of $40,100.01 remains owed to Mayflower. Accordingly, Mayflower shall be entitled to a Chapter 11 administrative claim in the amount of $40,100.01.

A separate Order granting such claim to Mayflower will be entered.