**In re FINEVEST FOODS, INC., et al., Debtors.**

**Bankruptcy Nos. 91–614–BKC–3P1 to 91–619–BKC–3P1.**

United States Bankruptcy Court,
M.D. Florida,
Jacksonville Division.

May 15, 1992.

James H. Post, Jacksonville, Fla., for debtors.

Michael E. Demont, Jacksonville, Fla., for Duke Power Co.

**582**

Lisa Gretchko, Detroit, Mich., for Official Frozen Foods Committee.

Edwin W. Held, Jr., Jacksonville, Fla., for Official Dairy Committee.

Thomas L. Burroughs, Orlando, Fla., U.S. Trustee.

## FINDINGS OF FACT AND CONCLUSIONS OF LAW

GEORGE L. PROCTOR, Bankruptcy Judge.

This proceeding is before the Court upon Duke Power Company's ("Duke Power") Motion for Determination and Payment of Administrative Expense Claim. The parties entered into a pretrial stipulation waiving their right to a trial and setting forth the relevant facts. Upon the pretrial stipulation, the Court enters the following Findings of Fact and Conclusions of Law:

### Findings of Fact

The parties stipulated to the facts as follows:

1. Duke Power is a publicly-held, state-regulated utility company that provides and has provided metered electricity service to Land–O–Sun at various locations in North Carolina and South Carolina since October, 1969, and to Southeast at its Spartanburg, South Carolina location since July, 1988.

2. Duke Power provides and/or provided metered electricity service to Debtors in accordance with state utility tariffs and/or utility service regulations filed by Duke Power with and approved by state regulatory commissions pursuant to state utility tariffs, which state utility tariffs and/or utility service regulations required and require Duke Power to bill Debtors in arrears rather than in advance.

3. Debtors filed their respective Chapter 11 petitions on February 11, 1991.

4. Duke Power has continued to provide Debtors with metered electricity service subsequent to the filing of Debtors' Chapter 11 petition(s).

5. Since the inception of the above-described business relationship between Duke Power and Debtors, Duke Power has billed Debtors for metered electricity service in accordance with the following procedure relative to each respective Debtor and each respective meter location, as more particularly set forth in Exhibit "A" hereto.

(i) The meter is read by Duke Power, on a monthly basis on or about a certain day of each month, thereby determining Debtors' electricity consumption for the preceding monthly billing cycle.

(ii) Debtors' electricity consumption varies on a daily, hourly and second by second basis.

(iii) The only method by which Duke Power is able to ascertain the amount of electricity consumed by Debtor is by reading the meter.

(iv) Once the meter is read and the amount due determined, an invoice is produced by Duke Power and sent to Debtors for payment.

6. On February 11, 1991, Debtors filed their Chapter 11 petition(s) and, thereafter, Duke Power read the Debtors' electricity consumption meters for the locations and account numbers set forth in Exhibit "A".

7. Subsequently, Duke Power submitted to Debtors invoices for payment for each respective account and location in the amounts and on the dates set forth in Exhibit "A".

8. Each of the invoices submitted by Duke Power to debtors, as evidenced by Exhibit "A" hereto, represents a charge for electricity consumption by Debtors which occurred both prior and subsequent to the filing of Debtors' petition(s) (the "Invoices").

9. Debtors' partial payments, to the extent made and as evidenced in Exhibit "A" hereto, are based on pro-rated estimates by Debtors as to the amount of electricity consumed by Debtors subsequent to the filing of Debtors' petition(s).

10. On or about March 15, 1991, W. Wallace Gregory, Jr., Assistant General Counsel of Duke Power, informed Debtors' counsel by letter that Duke Power

expected to be paid for the entire amounts as set forth in the Invoices as administrative expenses of the Debtors' estate(s).

11. Debtors have taken the position that said usage is not an administrative expense of the estate(s) of the Debtors and have refused and continue to refuse to pay the full amount of the debt resulting from the aforesaid meter readings, as evidenced by the amounts set forth in Exhibit "A" hereto.

The sole issue before the Court is whether post-petition reading of an electric meter renders the entire electricity charge an administrative expense when the billing cycle commences pre-petition and ends post-petition.

### Conclusions of Law

The allowance of an administrative expense priority is governed by § 503(b) of the Bankruptcy Code, which reads in relevant part:

(b) After notice and a hearing, there shall be allowed administrative expenses, ... including—

(1) (A) the actual, necessary costs and expenses of preserving the estate, including wages, salaries, or commissions for services rendered after the commencement of the case;....

Section 503(b) is intended to facilitate reorganization by encouraging creditors to conduct business with and extend credit to the debtor in possession:

If a reorganization is to succeed, creditors asked to extend credit after the petition is filed must be given priority.... Without a provision like § 503, efforts to reorganize would be hampered by the necessity of advance payment for all goods and services supplied to the estate since presumably no creditor would willingly assume the status of a non-priority creditor to a debtor undergoing reorganization.

*In re Jartran, Inc.*, 732 F.2d 584, 586 (7th Cir.1984) (citations omitted).

■ Generally, the overall objective of bankruptcy is to ensure that a debtor's resources are equally distributed amongst its creditors. The Bankruptcy Code grants priority to certain debts, but such statutory preference must be strictly construed in order to protect all creditors, as well as the integrity of the bankruptcy system. *In re Philadelphia Mortg. Trust*, 117 B.R. 820, 826 (Bankr.E.D.Pa.1990); *In re Amarex, Inc.*, 853 F.2d 1526, 1530 (10th Cir.1988).

■ The burden of proving a priority is upon the party claiming an administrative expense. *In re Amarex, Inc.*, 853 F.2d at 1530. *See In re Moore*, 109 B.R. 777, 780 (Bankr.E.D.Tenn.1989); *In re O.P.M. Leasing Services, Inc.*, 60 B.R. 679 (Bankr. S.D.N.Y.1986). Under § 503(b)(1) such burden involves proving that the claim was an actual and necessary cost of preserving the bankruptcy estate.

This Court considered whether certain severance benefits and medical insurance premiums for key employees terminated after the petition date were administrative expenses in *In re Rawson Food Services, Inc.*, 61 B.R. 207 (Bankr.M.D.Fla.1986). Like Duke Power, the debtor argued that the claims were entitled to administrative expense priority because the right to the benefits did not accrue until after the petition was filed.

This Court found that the critical factor to be considered was the time at which the consideration underlying the claim was tendered:

If the transaction creating the claim arises between the claimant and the debtor-in-possession and the consideration supporting the claim was tendered to and beneficial to the estate then the claim is entitled to priority as an administrative expense.

*Id.* at 209. The consideration for the severance benefits was then found to be the years of employment. Since such consideration was pre-petition, the benefits were not entitled to administrative expense priority. *Id.*

■ In the instant case, Duke Power has made a claim for an administrative expense based on meter readings made after the filing of the petition. The readings recorded electricity consumption for cycles that began pre-petition and ended post-petition. Thus, an undetermined portion of the electricity was used by the businesses be-

fore bankruptcy and the remainder was used by the debtor.

Duke Power's claim seeks payment for the electricity it furnished. Therefore, the consideration for the claim is the electricity. The meter reading merely established the amount consumed for purposes of calculating the bill. The fact that the meter was read post-petition does not affect the right to priority treatment for the entire billing cycle.

Utilizing the standard set forth in *Rawson,* only the electricity that was beneficial to the estate is entitled to administrative priority. The estate was not created until the petition was filed, thus any utilities dispensed prior to the filing was neither tendered nor beneficial to the estate. Accordingly, payment for such electricity is not entitled to an administrative priority.

The Tenth Circuit, in the *Amarex* case, considered whether a bonus to be paid to debtor's general counsel after one year of employment was entitled to administrative priority when the anniversary occurred post-petition. The Court stated:

Furthermore, the right to priority does not necessarily depend on the fact that the obligation to pay the bonus did not arise until after the commencement of bankruptcy proceedings. As the cases indicate, what is crucial is what *consideration* supports the bonus, and whether such consideration, or a portion of it, was pre-petition services.

*In re Amarex, Inc.,* 853 F.2d at 1531. The Court then concluded that the bonus was earned day by day throughout the first year and only the portion attributable to post-petition services was entitled to administrative priority. *Id.* at 1532. *See In re Christian Life Center,* 821 F.2d 1370, 1374 (9th Cir.1987).

Just as only the portion of the bonus earned after the bankruptcy filing satisfied § 503(b)(1) in the *Amarex* case, only the electricity consumed post-petition is entitled to administrative priority in the instant case. Duke Power, as the moving party, has the burden of proving its claim. The evidence fails to establish the portion of the utilities furnished post-petition, as opposed to pre-petition, and Duke Power has not met its burden.

A separate Order denying Duke Power's Motion for Administrative Expense will be entered.

EXHIBIT A

| Debtor | Account Number/Location | Prev. Date Meter Read | Date Meter Read | Date Inv. Produced | Amount of Invoice | Debtor's Partial Payment | Unpaid Balance |
|---|---|---|---|---|---|---|---|
| Southeast | 60141345404<br>3001 N. Blackstock Rd.<br>Spartanburg, SC | 1/15/91 | 2/12/91 | 2/15/91 | $ 6,555.45 | $ 0.00 | $ 6,555.45 |
| Land–O–Sun | 0934614302<br>408 Summitt Ave.<br>Greensboro, NC | 1/14/91 | 2/13/91 | 2/15/91 | $ 1,372.92 | $ 91.91 | $ 1,281.00 |
| Land–O–Sun | 02204113203<br>Frontage Rd. and Int. 85<br>Greenville, SC | 1/21/91 | 2/20/91 | 2/25/91 | $ 2,053.63 | $ 616.18 | $ 1,437.45 |
| Land–O–Sun | 02204113402<br>Frontage Road Sign<br>Greenville, SC | 1/21/91 | 2/20/91 | 2/25/91 | $ 1,159.44 | $ 347.79 | $ 811.65 |
| Land–O–Sun | 02204113602<br>Frontage Rd.<br>Greenville, SC | 1/21/91 | 2/20/91 | 2/25/91 | $ 1,325.98 | $ 397.78 | $ 928.20 |
| Land–O–Sun | 60973092611<br>New Cut Rd.<br>Spartanburg, SC | 1/22/90 | 2/21/91 | 2/27/91 | $69,360.23 | $22,655.52 | $47,398.31 |
| Land–O–Sun | 01243322402<br>3300 Plaza Rd.<br>Charlotte, NC | 1/28/91 | 2/27/91 | 3/4/91 | $ 1,456.44 | $ 776.80 | $ 679.64 |
| Land–O–Sun | 01900108201<br>3300 The Plaza<br>Charlotte, NC | 2/4/91 | 3/4/91 | 3/19/91 | $ 8,881.40 | $ 6,560.87 | $ 2,320.53 |