In re **FIRST TECHNOLOGY CORPORATION, Debtor.**

**Bankruptcy No. 92–3392–BKC–3P7.**

United States Bankruptcy Court,
M.D. Florida,
Jacksonville Division.

Jan. 17, 1995.

Victor J. Zambetti, for movant.

Robert Perry, for trustee.

Albert H. Mickler, for debtor.

## FINDINGS OF FACT AND CONCLUSIONS OF LAW

GEORGE L. PROCTOR, Bankruptcy Judge.

This case is before the Court upon the amended motions of Jax Distribution Center for administrative expense for rent and removal of hazardous wastes. A hearing was held on January 4, 1995, and upon the evidence presented, the Court enters the following Findings of Fact and Conclusions of Law:

### Findings of Fact

The parties have agreed to the relevant facts.[1]

1. Claimant is the owner of improved real property located at 1057 North Ellis Road, Jacksonville, Florida ("premises") which is the former business premises of the Debtor.

2. Debtor and Claimant entered into a lease for the premises for the term of July 15, 1990 through July 14, 1993 with a rental of $4,860.94 per month. The total space leased was 18,000 square feet and the cost per square foot under the lease was $3.24 per year.

3. The Debtor-in-possession never assumed the lease, and it was rejected by operation of law on August 22, 1992.

4. The premises were used by the debtor-in-possession for regular business purposes from June 11, 1992, the date of petition for bankruptcy under Chapter 11, through the conversion to Chapter 7 on May 14, 1993; and the Debtor continued to use the premises until the Trustee took possession on June 16, 1993.

5. Trustee employed the Ross–Dove Company, Inc. to conduct a public auction sale of the assets of the estate on the premises on September 21, 1993. The total amount bid at the public auction sale of $224,692.00, and the Auctioneer's fee was $39,321.10.

6. The debtor's equipment, excluding the plating lines and waste treatment equipment, occupied 60% of the premises and remained on the property until September 23, 1993.

The plating lines and waste treatment equipment occupied the other 40% of the premises and remained on the property from June 16, 1993, until December 23, 1993.

7. Trustee expended approximately $108,-000.00 of the estate's funds to dispose of the Debtor's hazardous materials that remained on the Claimant's premises. The Trustee completed its cleanup of the hazardous wastes on Friday, March 11, 1994 and Claimant received the keys to the Premises on Monday, March 14, 1994.

8. After the premises were returned, the Claimant contracted with Enviro–Test, Inc., an environmental contractor, to drill four wells and to monitor and analyze the results of same for the purpose of determining whether or not ground water and soil were contaminated ("Phase II Environmental Audit"). The initial cost of these services was $16,000.00.

9. Upon completion of the Phase II Environmental Audit, Enviro–Test, Inc. recommended that further field work, sample collection and laboratory analysis of the groundwater were necessary and the Landlord contracted with Enviro–Test, Inc. for same at a cost of $4,860.00.

10. Results from this second series of testing showed that all ground water contaminants were within guidelines recommended by the Florida Department of Environmental Protection.

11. On August 26, 1994, Claimant entered into a lease for the premises formerly occupied by Debtor with Geos, Inc. In exchange for the agreement by Geos, Inc. to contract for the performance of cleanup and treatment of the interior of the premises, Claimant represents that it agreed to a rent abatement in the amount of $38,284.14.

12. The parties agree that the Claimant is entitled to a Chapter 11 administrative claim (rent) of $14,425.57 consisting of $9,721.88 for rent and $4,703.69 for water bills, taxes and insurance.

13. The parties agree that the Claimant is entitled to a Chapter 7 administrative

---

1. The stipulation of the parties is reproduced verbatim. Errors in sentence structure or style are as submitted by the parties and are not corrected by the Court.

claim (rent) of $5,433.60 for thirty-four days of post conversion use of the premises by the Debtor (May 14, 1993 to June 16, 1993).

14. The Claimant claims that it is entitled to a Chapter 7 administrative claim (rent) at the lease rate of $4,860.94 per month through March 14, 1994, an additional $43,175.80. The Trustee objects to any allowance of any administrative claim (rent) beyond the date that the debtor ceased operations on June 16, 1993 except for storage of debtor's equipment at $1.50 per square foot per year or $9,912.32 (18,000 square feet from June 17 to September 23, 1993 and 7,200 square feet from September 24, 1993 to December 23, 1993).

15. The Claimant further represents that it is entitled to Chapter 7 administrative claim (hazardous waste) in the amount of $59,144.14 for its cleanup of and testing for hazardous materials used by the Debtor. The Trustee objects to allowance of any amount for Claimant's cleanup of or testing for hazardous materials as an administrative expense but does not object to the allowance of $59,144.14 as a general unsecured claim.

### Conclusions of Law

■ Section 503 governs the allowance of administrative expenses. Section 503 states in relevant part:

> (b) After notice and a hearing, there shall be allowed administrative expenses, ... including—
>> (1)(A) the actual necessary costs and expenses of preserving the estate, including wages, salaries, or commissions for services rendered after the commencement of the case; ...

To be considered an actual necessary cost or expense of preserving the estate the expense must "bestow a concrete benefit to the estate." *In re Apollo Moving Specialists of Daytona Beach,* 137 B.R. 538, 539 (Bankr. M.D.Fla.1992). The claim must also arise post petition. *Id.*

■ The Court finds that the Trustee had actual possession of the premises until he returned the keys to claimant March 14, 1994. In addition, the lease provided a benefit to the debtor in possession and the trustee

because both occupied the premises prior to March 14, 1994. In addition, the former lease rate is reasonable. The evidence presented by the trustee to substantiate the trustee's $1.50 per square foot rental rate was insufficient to rebut the reasonableness of the lease rate. Thus, Claimant is entitled to receive rent at the lease rate through March 14, 1994.

■ An administrative expense claim for hazardous waste may be allowed for the cleanup and disposal of hazardous waste generated by post-petition activities of debtor-in-possession or the trustee. The evidence presented indicates that the contamination and hazardous waste was generated pre-petition. Therefore, the administrative claim for hazardous waste is denied. However, the claim is allowed as a general unsecured claim.

The Court will enter a separate order consistent with these findings of fact and conclusions of law.

### ORDER GRANTING IN PART AND DENYING IN PART AMENDED MOTIONS FOR ADMINISTRATIVE EXPENSE OF JAX DISTRIBUTION CENTER

Upon findings of fact and conclusions of law separately entered, it is

ORDERED:

1. Amended Motion for chapter 11 administrative expense for rent in the amount of $14,425.57 is granted.

2. Amended motion for chapter 7 administrative expense for rent in the amount of $48,609.40 is granted.

3. Amended motion for administrative expense for hazardous waste cleanup is denied and the claim is allowed as an unsecured claim in the amount of $59,144.14.