**In re BUYER'S CLUB MARKETS, INC., a Delaware corporation, Debtor.**

**Kenneth BAGUS, Appellant,**

v.

**Christopher CLARK, Trustee, Appellee.**

**No. 93–1107.**

United States Court of Appeals, Tenth Circuit.

Sept. 14, 1993.

Huntington C. Brown, Denver, CO, for appellant.

Paul G. Quinn and Joseph G. Rosania, Denver, CO, for appellee.

Before LOGAN, MOORE, and BRORBY, Circuit Judges.

JOHN P. MOORE, Circuit Judge.

After examining the briefs and appellate record, this panel has determined unanimously that oral argument would not materially assist the determination of this appeal. *See* Fed.R.App.P. 34(a); 10th Cir.R. 34.1.9. The cause is therefore ordered submitted without oral argument.

This is an appeal from a ruling of the district court sitting as an appellate court in bankruptcy. 150 B.R. 787. That court affirmed an order of the bankruptcy court denying priority status to certain post-Chapter 11 petition severance pay claims. Unable to find any error in law, we affirm.

Appellants, the former president and salaried employees of the debtor, Buyer's Club Markets, Inc., contend claims asserting certain severance pay rights created after the filing of their employer's Chapter 11 petition are entitled to priority treatment following the conversion of the reorganization to a liquidating bankruptcy. Their contention is based upon a policy adopted by Buyer's Club which authorized sixty days' severance pay to salaried employees in the event of a Chapter 7 conversion.[1] Appellants (Employees) admit approval of the bankruptcy court was not obtained for the adoption of this policy.

After conversion, Employees filed claims asserting a priority under 11 U.S.C. § 503(b)(1)(A)[2] as an expense of administration. In his capacity as Trustee of the Chapter 7 estate, Appellee (Trustee) objected to the claims. In effect, the bankruptcy court sustained the objection on the ground the severance pay policy had not been approved by the bankruptcy court during administration of the reorganization proceeding. The court ruled a pre-adoption notice was required by 11 U.S.C. § 363(c)(1)[3] because the severance policy was not entered into in the ordinary course of business.

Employees contend they were deprived of an opportunity to establish, by a showing of fact, why the severance pay policy was within the ordinary course of business. They assert if the bankruptcy court had held an evidentiary hearing on the issue, they would have been able to prove the policy was the outgrowth of management's efforts to stem the loss of salaried employees caused by the effects of the Chapter 11 proceeding. Moreover, Employees claim the bankruptcy court's failure to take evidence and make findings of fact makes its ultimate conclusion clearly erroneous.

The argument blurs the real issue. The bankruptcy court held, as a matter of law, severance pay rights which became choate only *after* conversion to a Chapter 7 liquidation could not be rights created within the ordinary course of the business conducted by

---

1. The policy provided:
   If, while in the process of Reorganization under Chapter 11 of the Bankruptcy Code, Buyer's Club is converted by the Court from a Chapter 11 to a Chapter 7, Buyer's Club will provide each salaried employee with sixty (60) days' severance pay.

2. The "actual, necessary costs and expenses of preserving the estate, including wages ... for services rendered after the commencement of the case," are allowed as expenses of administration.

3. "If the business of the debtor is authorized to be operated under section ... 1108 ... of this title and unless the court orders otherwise, the [debtor in possession] may enter into transactions ... in the ordinary course of business without notice or a hearing."

the debtor. Specifically, the bankruptcy court ruled:

> Although this severance pay policy—and I put that in quotes—is not nearly as egregious as in [a cited case] I find as [a] matter of law that it was not a matter entered into in the ordinary course of business.
>
> [O]n its face it shows that it is not. The severance policy would pay the employees only if [debtor is] converted to a Chapter 7; not if it continues in an 11, not if it's confirmed, and not if it's dismissed. That's hardly in the ordinary course of business.
>
> [A]ll this was, was a hidden attempt to burden the Chapter 7 creditors;[4] not the Chapter 11 creditors and not the debtor if the case was dismissed, but only the Chapter 7 creditors, and they surely have a right to know about that....
>
> ....
>
> That's all this is. It was something that would affect only the Chapter 7 creditors. It wouldn't affect the Chapter 11 creditors or the debtor if the case was dismissed. It wouldn't affect the debtor if the Chapter 11 were successful. That's the egregious part of it. And that's what makes it out of the ordinary course of business.
>
> If it was a straight-across policy that would remain in effect regardless of whether it was a Chapter 11, 7, dismissed, or successful reorganization, I wouldn't be able to make this finding. I may have had to go into additional facts. But as a matter of law I'm sustaining the trustee's objections to these severance pay claims.

This view, of course, eliminates the bankruptcy court's need to consider the effect of any factual justification the debtor had for the adoption of its policy. Thus, we are not concerned whether the bankruptcy court's ruling was clearly erroneous because it was not based upon a fact-finding.[5]

The question we must resolve is whether the bankruptcy court's determination is legally, not factually, supportable. At the nub of our analysis is only one question: Under any circumstance, is it within the ordinary course of the business of an employer to create a salary policy that will vest only upon the employer's bankruptcy liquidation? If the answer is yes, the bankruptcy court erred in law, and this case must be remanded.

This analysis starts with the realization that the salary policy we examine, if valid, served only one purpose: it created a priority of payment for Employees that gave them a claim for compensation beyond what they earned in exchange for services performed while employed. Indeed, assuming the Employees correctly represent management's decisional process, the salary policy was not adopted as payment in exchange for labor, but only as an incentive to keep people from leaving their jobs by assuring them if liquidation occurred, they would receive extra compensation.

Moreover, because of the provisions of the Bankruptcy Code, those payments would be made before any distributions to the non-priority creditors of the estate. We must therefore ask, "Is that the type of decision that is ordinarily made during the course of business?"

We think not. The day-to-day affairs of any entity are not concerned with the possibility of a bankruptcy liquidation. Even those management decisions made during the course of a bankruptcy reorganization which are necessary to keep a debtor in possession afloat are not driven by the prospect of liquidation. Operating decisions and policies are governed by what steps are required to make a business function, not by what will happen if a liquidation occurs and business stops.

Indeed, the Bankruptcy Code, in its ordinary course of business exception to the notice and hearing provisions of § 363(c)(1), recognizes the commercial facts of life. The Code takes cognizance of the fact that if a

---

4. The Employees argue this is a finding of fact made without the benefit of evidence. We disagree. This was a conclusion drawn from the context of the written policy.

5. Only findings of fact are subject to the clearly erroneous test. Fed.R.Bky.P. 7052, adopting Fed.R.Civ.P. 52, includes: "Findings of fact, whether based on oral or documentary evidence, shall not be set aside unless clearly erroneous...."

debtor had to seek court approval to pay for every expense incurred during the normal course of its affairs, the debtor would be in court more than in business. Thus, the Code does not require micromanagement by the bankruptcy court for the day-to-day affairs of a debtor. We may conclude, therefore, the Code likens the management of ordinary operating affairs of a debtor to those of any business entity and allows the debtor's management free rein to make those decisions.

Yet, the Code also recognizes there are business decisions of any Chapter 11 debtor which are oriented to commercial achievement but are beyond the normal course, in the bankruptcy context, because they may affect the rights of creditors. Because the bankruptcy court must be vigilant to creditors' rights, management decisions which go beyond merely keeping the debtor in daily business fall within the shadow of § 363(c)(1). When management of a Chapter 11 debtor undertakes an operating policy which transcends the day-to-day affairs of an entity to the potential detriment of creditors, those parties are entitled to prior notice and an opportunity to be heard. The corollary to this principle, of course, is such a policy cannot be enforced unless notice and opportunity were given to interested parties.

The incentive policy adopted by the debtor in this instance clearly is one affecting the rights of creditors. As cogently noted by the bankruptcy court, the policy granted no rights to Employees if the debtor remained viable. Indeed, by the very terms of the policy, management itself could not have paid the severance because the right to payment did not arise until conversion to a liquidating bankruptcy. At that time, the debtor in possession was without authority to function. 11 U.S.C. § 348(e). In the bankruptcy context then, execution of the severance pay policy could not have been in the ordinary course of business. Indeed, no matter whatever principle is used to measure the issue, not even debtor suggests a management policy which becomes effective only after an entity is liquidated is part of the course of

business. As the bankruptcy court intimated, after liquidation, there is no business.

The obvious purpose of this policy is exactly what the bankruptcy court determined: a plan to give certain employees, including the president of the debtor, a Chapter 7 claim and put that claim ahead of any of the debtor's creditors. A court needs no evidentiary hearing to reach that conclusion for it is evident on the face of the policy. Whether that policy was an endeavor to stop the drain of employees so the debtor could stay in business or otherwise, the post-liquidation effect of that policy on creditors was undeniably a matter upon which the creditors should have had notice and a hearing. *In re Media Cent., Inc.,* 115 B.R. 119, 125 (Bankr. E.D.Tenn.1990).

The policy simply could not have been validated without a careful weighing of the advantage to be gained by the debtor and the potential detriment to be sustained by creditors. As the bankruptcy court pointedly observed:

> [The debtor] want[ed] to give [the employees] something extra to retain them, fine. Let's get it out in the open and see what it is and see if anybody objects.
>
> . . . .
>
> Evidently this is, and I think counsel have admitted this is, at least, a radical departure from whatever the severance pay policy was pre-petition.[6]

The failure of the debtor to submit the policy to the hearing process prior to its implementation deprives Employees of the right to assert an administrative claim because the policy does not fit within the exception created by § 363(c)(1). *Matter of Century Brass Prods., Inc.,* 107 B.R. 8, 11–12 (Bankr. D.Conn.1989).

Although raised as an issue, we do not reach the question of whether the severance pay was a priority claim as a necessary expense of administration because the underlying policy was not enforceable by the Employees. It is, however, cogent to note that only those salaries paid "for services rendered after the commencement of the case"

---

6. Employees assert this is a finding of fact made without the benefit of evidence. The context,

based upon the admission of counsel, indicates to us the issue was not in controversy.

qualify as administrative expenses under § 503(b)(1)(A). Inasmuch as the policy created a right to severance pay that did not arise until after liquidation and did not require the rendition of services during administration, it is difficult to see how the severance pay could reach the level of an administrative expense, by definition. Thus, were the policy enacted within the ordinary course of business, the claims would still fail.

Employees argue the bankruptcy court erred in drawing a distinction between the rights of debtor's employees hired before and after the Chapter 11 petition. Yet, that issue was not raised in the docketing statement. Moreover, nothing in the record indicates the pre-petition versus post-petition distinction had anything to do with the ruling sustaining the objections to Employees' claims. Apparently, the ruling drawing the distinction between Employees came after a hearing to approve a settlement and, on the record, is disconnected from the issue before us. Our analysis makes that distinction pointless in any event.

**AFFIRMED.**