**In re GENEVA STEEL COMPANY, Debtor.**

**Bankruptcy No. 99C–21130.**

United States Bankruptcy Court, D. Utah.

July 20, 1999.

Steven J. McCardell, Leboeuf Lamb Greene & Macrae, Salt Lake City, UT, Mark C. Ellenberg, Cadwalader Wickersham & Taft, New York City, for Geneva Steel Co.

Richard M. Seltzer, Cohen Weiss and Simon, New York City, Arthur Sandack, Salt Lake City, UT, for United States Steelworkers of America.

J. Thomas Beckett, Parsons Behle & Latimer, Salt Lake City, UT, for the Official Committee of Unsecured Creditors.

Weston L. Harris, Ray Quinney & Nebeker, Salt Lake City, UT, Stephen E.

Garcia, Hopkins & Sutter, Chicago IL, for the Committee of Bondholders.

Peter J. Kuhn, Salt Lake City, UT, for the United States Trustee.

ORDER DENYING GENEVA STEEL COMPANY'S MOTION FOR IMPLEMENTATION OF EMPLOYEE RETENTION PROGRAM WITHOUT PREJUDICE

GLEN E. CLARK, Chief Judge.

Geneva Steel Company's Motion for Order Authorizing Implementation of Employee Retention Program ("Motion") came before the court June 23, 1999. Those appearing were Steven J. McCardell, Esq., and Mark C. Ellenberg, Esq., for Geneva Steel Company ("Geneva"); Richard M. Seltzer, Esq., and Arthur F. Sandack, Esq., for the United Steelworkers of America AFL–CIO–CLC ("Steelworkers"); J. Thomas Beckett, Esq., for the Official Committee of Unsecured Creditors; Weston L. Harris, Esq., and Stephen E. Garcia Esq., for the Official Committee of Bondholders; and Peter J. Kuhn, Esq., for the United States Trustee. Having considered the pleadings, the evidence, and the arguments of counsel, the court, for the reasons stated below, denies Geneva's Motion without prejudice.

## FINDINGS OF FACT

Geneva's Motion seeks leave of court to implement an employee retention program designed to provide an incentive for 36 key employees of Geneva to remain with Geneva through the reorganization process. The retention program affects six senior executives and 30 managers[1] (collectively referred to as "key employees") and is made up of two parts: a severance plan for the six senior executives, and an emergence bonus for the six senior executives and the managers.

---

1. The Motion filed by Geneva described 31 managers who would be affected by this Motion. However, at the hearing, the court was advised that only 30 managers would be involved in the retention program.

The severance plan entitles each of the six senior executives to severance pay equal to six months salary if terminated by Geneva for any reason other than death, disability or cause prior to the date of substantial consummation of a plan of reorganization, and for severance pay equal to nine months salary if terminated within 90 days after the date of substantial consummation of a plan of reorganization. Severance benefits would be payable 30 days after the executive is terminated.

The emergence bonus entitles all key employees to a bonus if they are still employed on the date of substantial consummation of Geneva's plan of reorganization. Senior executives would receive a bonus of 50% of their annual salary.[2] Managers would, in the discretion of Geneva's management, receive a bonus of up to 25% of their salary.[3]

Geneva argues that the retention program is critical to its business success and ongoing vitality. It contends that there is a real danger that key employees will be enticed away by other companies if a retention plan is not implemented, and that, without the services of these key employees, it will be difficult to stabilize, preserve, and successfully reorganize Geneva's business.

Geneva further argues that the proposed retention program is based on its board's sound business judgment. Geneva's board

of directors approved the retention program based upon the recommendations of management, The Blackstone Group, Geneva's outside financial advisor, and William M. Mercer, Inc., Geneva's expert on corporate compensation.

The Motion is supported by the Official Committee of Unsecured Creditors and the Official Committee of Bondholders. At the hearing, Geneva introduced uncontested evidence that (1) key employees are difficult to replace because talented job candidates often avoid working for a company in Chapter 11; (2) an executive search firm would likely need to be retained and their fees usually are 30% of the key employees' base salaries and bonuses; (3) signing bonuses, reimbursement for relocation expenses and above market salaries would be required to induce qualified candidates to accept employment with a Chapter 11 debtor; (4) the loss of key employees often leads to additional resignations of other key employees; and (5) a committee of "outside" (nonemployee) directors approved the retention program proposed in the Motion.

The United States Trustee and the Steelworkers object to the Motion. The United States Trustee argues that more detail regarding Geneva's Motion should be provided, including a more precise definition of the term "substantial consumma-

**2.** Senior executives would receive ½ of their bonus in stock of the reorganized company and ½ of the bonus in cash unless the confirmed plan of reorganization does not provide for distribution of stock or it is otherwise impracticable for stock to be distributed. In which event, the executive has the right to receive the entire bonus in cash. The retention program has been modified in three respects: First, Joseph A. Cannon, the Chief Executive Officer of Geneva and one of the six senior executives, waives any and all claims under the provisions of his employment contract to the extent that the contract is inconsistent with the retention program. He will be eligible only for the severance benefits set forth in the retention program. Second, Mr. Cannon will not be entitled to a severance benefit if he is terminated after conversion of the case to a Chapter 7 liquidation except as

the Chapter 7 Trustee may determine to provide. Third, Mr. Cannon's emergence bonus will be paid entirely in stock of the reorganized company to the extent the confirmed plan of reorganization provides for distribution of stock in the reorganized company to Mr. Cannon. To the extent the plan of reorganization does not provide for distribution of stock to Mr. Cannon, the bonus will be paid in cash.

**3.** At the hearing, Geneva indicated that it was management's intention to immediately commit to paying all managers the full 25% emergence bonus thereby eliminating any uncertainty created by leaving the amount of each manager's emergence bonus to the sole discretion of Geneva's management.

tion," and that severance payments under the retention program may be entitled to an inappropriately high priority if the case is converted to Chapter 7.

The Steelworkers argue that the retention program sends the wrong message to Geneva's work force, that the emergence bonus may be payable to key employees even if a Chapter 11 liquidating plan is confirmed, that the severance plan contains no provision for mitigation in the event an executive finds other work after termination, and that Geneva did not consult the Steelworkers prior to submitting the retention program to the court. In support of its objection, the Steelworkers placed into evidence a petition signed by over 900 Geneva employees opposing the retention program.

## CONCLUSIONS OF LAW

### Business Judgment

Geneva argues that the decision to offer the retention program is the sound business judgment of its board of directors. The court finds that to propose this retention program without first having discussed its provisions with the Steelworkers is not an example of sound business judgment. This is particularly true in light of the circumstances faced by Geneva today. Management may appropriately reserve decisions on executive benefits to itself and its directors when all is well, but when the continued existence of the business is in question and the executive benefits are subject to court approval, the dynamics of the decision making process must change. Mr. Cannon expressed profound surprise at the depth of the Steelworkers' opposition to the proposed retention program. This is not the type of surprise that the court expects to find at the hearing on such a motion.[4]

While there is evidence that retention of the key employees is critical to Geneva's survival, there is also evidence that granting the Motion as prayed may jeopardize the continuing support of the Steelworkers in Geneva's reorganization process. Indeed, evidence was presented that some plumbers and electricians have already left Geneva's employment. The court views the support and participation of the Steelworkers as being equally critical to Geneva's successful reorganization as the support and participation of the key employees. The tension created by these opposing interests creates a significant dilemma for the court. To deny the Motion in full increases the risk that Geneva's management team may be lost or further reduced. However, to grant the Motion in full risks alienating the Steelworkers and their support of Geneva's efforts to reorganize. In an effort to fashion a compromise between these competing interests, the court will comment on the relative merits of the proposed retention program and invite Geneva to renew its Motion if it so desires.

### Severance Plan

The severance plan is justified in part by Geneva's argument that its executives are in need of a "cushion" to fall back upon in the event that they are terminated. When viewed strictly as a "cushion," it makes sense for Geneva to provide a severance benefit for its senior executives to assist them through a period of unemployment. It is only with great deference to Geneva's business judgment that the court partially defers to Geneva's opinion that because the senior executives' services are highly sought after by competing employers they must be protected from prolonged periods of unemployment. Yet, it does not make sense to use the severance plan to provide the senior executives with a windfall. To be acceptable to this court,

---

4. If Geneva's management had consulted with the Steelworkers while formulating its retention program, the resulting program might have accommodated the Steelworkers' objec-

tions, might have been submitted to the court unopposed, and might have been approved by the court as filed.

the severance plan must contain a mitigation provision that reduces the amount payable in the event the executive obtains other employment during the six or nine month reimbursement period.

■■ The severance plan provides that all severance payments shall be made within 30 days following the executive's termination. Because the severance payments are offered by Geneva in consideration for the senior executives' continued employment during the bankruptcy proceeding, the severance payments are entitled to administrative priority. *In re Amarex, Inc.*, 853 F.2d 1526 (10th Cir. 1988) (the crucial issue is what consideration supports the bonus, and whether such consideration, or a portion of it, was pre-petition services). To be entitled to priority treatment in the event the case is converted to a case under Chapter 7, the severance plan must be approved by the court after notice and hearing. *In re Buyer's Club Markets, Inc.*, 5 F.3d 455 (10th Cir.1993). Because the severance plan provides that severance payments are payable if the employee is terminated after the case is converted to Chapter 7 and that all severance payments shall be made within 30 days of the executive's termination, it appears that the severance payments are intended not to be subject to § 726(b) subordination. Such a severance plan is unacceptable because of the adverse impact the provision could have on the administration of the case in Chapter 7.[5] To be approved by this court, the severance plan must provide that in the event the case is converted to a case under Chapter 7, severance payments shall be treated as Chapter 11 administrative expense claims, and shall be paid by the Chapter 7 trustee as promptly as practicable on a pro rata basis with all other Chapter 11 administrative expense claims.

*Emergence Bonus*

■ The emergence bonus proposes to pay senior executives 50% of their emergence bonus in stock,[6] and 50% in cash. However, the court believes that the approach voluntarily taken by Mr. Cannon to accept the entire emergence bonus in stock is the better approach, and it should apply to each of the six senior executives.

The emergence bonus proposes to pay key employees a bonus upon confirmation and substantial consummation of a plan of reorganization. Because the Motion specifically refers to a "plan of reorganization," the court will construe the Motion as proposing to pay the emergence bonus only in the event that a "plan of reorganization" is confirmed, and not a Chapter 11 liquidating plan.

Based upon the foregoing and other good cause showing, it is hereby

ORDERED that Geneva's Motion for authorization to implement an employee retention program is denied without prejudice, and it is further

ORDERED that Geneva is granted leave of court to set a hearing on ten days notice to parties present at the hearing of June 23, 1999, for approval of a retention program consistent with this order.

---

5. Severance payments total as high as $1,035,351.

6. The court applauds Mr. Cannon's willingness to voluntarily take 100% stock instead of 50% stock and 50% cash.